IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KADENCE KREI, legally known as; KALEM KREI<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF NEBRASKA, JASON JACKSON, in his official capacity as Director of the Nebraska Department of Administrative Services; and DANNETTE R. SMITH, in her official capacity as CEO of the Nebraska Department of Health and Human Services;<br><br>Defendants. | 4:19-CV-3068<br><br>MEMORANDUM AND ORDER |

## I. INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Filing 11. Plaintiff, Kadence Krei, identifies as a transgender woman. Filing 2 at 1. Krei worked as a Developmental Technician II in the Developmental Disabilities Department for the State of Nebraska from May of 2018 to February of 2019. Filing 2 at 1. The State of Nebraska provides health insurance coverage to state employees through the Well Nebraska Health Plan ("the Nebraska Plan"). Filing 2 at 1.

According to the Amended Complaint, the Nebraska Plan includes coverage for hormone replacement, breast construction, and vaginoplasty but specifically excludes coverage for "sex transformation operations and related services." Filing 2 at 3. Due to this exclusion, Krei filed suit and brought two causes of action against Defendants: Violation of Title VII of the Civil Rights Act of 1964 (Count I) and Violation of the Equal Protection Clause of the Fourteenth Amendment (Count II). Filing 2 at 12-14.

1

Defendants responded by filing the current Motion to Dismiss. Filing 11. First, Defendants argue Count II is barred by the doctrine of sovereign immunity. Filing 11 at 5. Second, Defendants assert Counts I and II are moot or that Krei lacks standing. Third, Defendants argue both Counts I and II fail to state claims for which relief can be granted. Filing 11 at 5. For the reasons discussed below, Counts I and II are dismissed.

## II. BACKGROUND

Krei has a diagnosis of gender dysphoria and identifies as a transgender woman. Filing 2 at 1, 2. According to the Amended Complaint, transgender women are individuals who were assigned male at birth but identify with a female gender identity. Filing 2 at 8. Gender Dysphoria is described in the DSM-5 as "[a] marked incongruence between one's experienced/expressed gender and assigned gender, of at least 6 months duration, as manifested by [at least two of the six listed conditions]." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 452, § 302.85 (5th ed. 2013).

The legal issue in this case is whether the Nebraska Plan is required to provide Plaintiff coverage for gender-transformation surgery pursuant to Title VII of the Civil Rights Act of 1964 (Count I) and Violation of the Equal Protection Clause of the Fourteenth Amendment (Count II). As an employee of the State of Nebraska, the Nebraska Plan provided Krei's healthcare coverage from May 2018 to February 2019. Filing 2 at 1, 11. In general, the Nebraska Plan states that "[m]embers shall be entitled to Medically Necessary services and supplies, if provided by or under the direction of a Physician." Filing 2 at 11. The Nebraska Plan defines "Medically Necessary" as "[h]ealth care services or supplies needed to prevent, diagnose or treat an illness, injury, condition, disease or its symptoms and that meet accepted standards of medicine." Filing 2 at 11. Plaintiff alleges the requested procedure is "medically necessary" under the definition of the Nebraska Plan.

Filing 2 at 11. However, the Nebraska Plan categorically excludes all "[s]ervices or drugs related to gender transformations" regardless of medical necessity. Filing 2 at 11.

In 2018, Krei sought preauthorization from United Health Care, the Nebraska Plan's administrator, before scheduling a vaginoplasty as part of her requested treatment for gender dysphoria. Filing 2 at 12. Krei's primary care physician, surgeon, and psychologist provided Krei with referrals for this procedure. Filing 2 at 12. The doctors and health care professionals involved concluded the treatment was medically necessary. Filing 2 at 12. United Health Care denied preauthorization in a letter, stating that "'while it may be medically necessary' [the employee health plan] 'specifically excludes coverage for Services (sic) or drugs related to gender transformations.'" Filing 2 at 12 (alterations in original). Krei timely filed and then lost a first-level appeal with United Health Care because of the categorical exclusion in Defendant's health plan for "[s]ervices . . . or drugs related to gender transformations." Filing 2 at 12. Krei resigned from her position with the State of Nebraska in February 2019. Filing 2 at 12.

### III. STANDARDS OF REVIEW

#### A. Lack of Subject-Matter Jurisdiction—Fed. R. Civ. P. 12(b)(1)

"[S]overeign immunity . . . is a jurisdictional threshold matter" that is properly addressed under Rule 12(b)(1). *See Lors v. Dean*, 746 F.3d 857, 861 (8th Cir. 2014) (quoting *Harmon Indus., Inc. v. Browner*, 191 F.3d 894, 903 (8th Cir. 1999)); *Brown v. United States*, 151 F.3d 800, 803–04 (8th Cir. 1998). The plaintiff has the burden of proving jurisdiction exists; "[h]owever, the 'heavy' burden of proving mootness falls on the party asserting the case has become moot." *Kennedy Bldg. Assocs. v. Viacom, Inc.*, 375 F.3d 731, 745 (8th Cir. 2004) (citing *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S. Ct. 1379 (1979)).

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). "In a facial challenge to jurisdiction, the court presumes all of the factual allegations concerning jurisdiction to be true and will grant the motion only if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Young Am. Corp. v. Affiliated Comput. Servs.*, 424 F.3d 840, 843-44 (8th Cir. 2005) (citing *Titus*, 4 F.3d at 593).

### B. Failure to State a Claim—Fed. R. Civ. P. 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 192 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, but [is] not bound to accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' or legal conclusions couched as factual allegations." *McDonough v. Anoka Cty.*, 799 F.3d 931, 945 (8th Cir. 2015) (citations omitted) (quoting *Iqbal*, 556 U.S. at 678). "When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict

the complaint, as well as materials that are necessarily embraced by the pleadings." *Ashford v. Douglas Cty.*, 880 F.3d 990, 992 (8th Cir. 2018) (quoting *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014)).

## IV. ANALYSIS

Krei alleges that the Nebraska Plan's prohibition on insurance coverage for "sex transformation operations and related services" 1) violates Title VII of the Civil Rights Act of 1964 and 2) violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Krei seeks "[i]njunctive relief with respect to all Defendants;" "[d]eclaratory relief, including but not limited to a declaration that Defendants violated Title VII and the Equal Protection Clause;" and "[c]ompensatory, consequential, and punitive damages with respect to Defendants in an amount to be determined at trial for violation of Title VII and the Equal Protection Clause." Filing 2 at 15. Plaintiff further requests "reasonable costs and attorneys' fees pursuant to Title VII and 42 U.S.C. §§[] 1988, 1983, and 1981." Filing 2 at 15.

The Court will address Krei's Title VII and Equal Protection Clause claims in turn.

### A. Title VII Claim

Title VII of the Civil Rights Act of 1964 provides that employers may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex." 42 U.S.C. § 2000e-2(a)(1). Krei alleges she was discriminated against on the basis of sex when the State of Nebraska categorically excluded coverage for all services related to gender transformation from its insurance coverage. Filing 2 at 13. Defendants respond that Krei's Title VII claim is barred by sovereign immunity, that Krei lacks standing and/or her claim is moot, and that her cause of action fails to state a claim under Title VII. Filing 12. The Court concludes that Krei's Title VII claim cannot be dismissed on the basis

of being barred by sovereign immunity or lack of standing. However, the claim is dismissed because binding Eighth Circuit precedent holds that allegations of discrimination for transgender identification or status do not fall under the prohibitions of Title VII.

   *1. The State's Sovereign Immunity Defense for Plaintiff's Title VII Claim*

The Court will first address the State of Nebraska's contention that Plaintiff's claim under Title VII is barred pursuant to the doctrine of sovereign immunity.

Sovereign immunity is a jurisdictional issue that the Court must address first. *See, e.g.*, *Harmon Indus.*, 191 F.3d at 903 ("Sovereign immunity, however, is a jurisdictional threshold matter . . . ."). "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Church v. Missouri*, 913 F.3d 736, 742 (8th Cir. 2019) (quoting *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253, 131 S. Ct. 1632, 179 L. Ed. 2d 675 (2011)). The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. Amend. XI.

The Eighth Circuit Court of Appeals recognizes that Title VII, through Section 5 of the Fourteenth Amendment, abrogates a state's Eleventh Amendment sovereign immunity. In *Maitland v. University of Minn.*, 260 F.3d 959, 964 (8th Cir. 2001), the Eighth Circuit noted that the Supreme Court in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S. Ct. 2666, 49 L. Ed. 2d 614 (1976), "ultimately concluded that the State's Eleventh Amendment immunity was abrogated by Title VII, which was enacted under Section 5 of the Fourteenth Amendment, and that the [plaintiffs therein] were permitted to recover . . . from the State."

Given the holding in *Maitland*, the Court concludes the defense of sovereign immunity does not alone legally support dismissal of Plaintiff's Title VII claim.

*2. Standing, Mootness for Title VII Claim*

The State of Nebraska next alleges that Plaintiff's Title VII claim fails because it is moot and/or she lacks standing because she no longer works for the State of Nebraska. Filing 12 at 5-8.

The Supreme Court answered in the affirmative the question of whether Title VII covered claims by former employees in *Robinson v. Shell Oil Co.*, 519 U.S. 337, 339, 117 S. Ct. 843, 845, 136 L. Ed. 2d 808 (1997). The plaintiff in *Robinson* had already been fired from his job when he filed a retaliation claim for racial discrimination under § 704(a) of Title VII, which makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment" who have availed themselves of Title VII's protections. *Id.* at 339, 117 S. Ct. at 845. In finding the statute encompassed his claim, the Court noted "there is no temporal qualifier in the statute such as would make plain that [Title VII] protects only persons still employed." *Id.* at 341, 117 S. Ct. at 846. The Court also noted that "several sections of the statute plainly contemplate that former employees will make use of the remedial mechanisms of Title VII," lending credibility to an interpretation of the term "employee" that included former employees. *Id.* at 345, 117 S. Ct. at 848. The Court concluded that "consistent with the broader context of Title VII and the primary purpose of § 704(a), we hold that former employees are included." *Id.* at 346, 117 S. Ct. at 849.

Although the present case is not a retaliation case, the Supreme Court's reasoning in *Robinson* applies in equal measure to Krei's claim. The Court concludes, consistent with the Supreme Court's logic, that the fact that Krei no longer works for the State of Nebraska is not alone a bar to making a claim under Title VII. Indeed, holding otherwise would create perverse incentives for employers to terminate employees with potential Title VII claims in order to avoid liability, as the *Robinson* Court recognized. *Id.* at 346, 117 S. Ct. at 848. Accordingly, the Court

7

concludes that Krei's Title VII claim is not barred by either mootness or lack of standing based on the fact she is no longer employed by the Defendants.

    *3. Whether Discrimination for Transgender Identification or Status Falls under Title VII*

Pursuant to Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a)(1).

The fundamental question in this case is whether the Nebraska Plan's prohibition of the use of funds for sex transformation procedures can constitute a violation of Title VII as discrimination on the basis of "sex." The Court concludes that, pursuant to binding Eighth Circuit Court of Appeals precedent, and an evaluation of the plain language of the statute at issue, as interpreted by the United States Supreme Court, the answer is no.

The case of *Sommers v. Budget Marketing, Inc.*, 667 F.2d 748 (8th Cir. 1982), specifically addressed the question of whether the term "sex" under Title VII includes claims of discrimination against a transgender person. In *Sommers*, the plaintiff "claim[ed] to be a 'female with the anatomical body of a male.'" *Id*. at 748. Sommers was fired after "a number of female employees indicated they would quit if Sommers were permitted to use the restroom facilities assigned to female personnel." *Id*. at 748-49.

"Sommers brought an action . . . alleging that she had been discharged on the basis of sex in violation of Title VII of the Civil Rights Act of 1964." *Id*. at 749. "Sommers . . . argued that the court should not be bound by the plain meaning of the term "sex" under Title VII as connoting either male or female gender, but should instead expand the coverage of [Title VII of the Civil Rights Act of 1964] to protect individuals such as herself who are psychologically female, albeit

biologically male." *Id.* at 749. The Court held "[t]he issue [before the Court was] whether Congress intended Title VII of the Civil Rights Act to protect transsexuals from discrimination. . . . [W]e hold that such discrimination is not within the ambit of the Act." *Id.* at 750.

In responding to the State of Nebraska's argument that the *Sommers* case controls resolution of this dispute, Krei contends that the conclusion of the United States Supreme Court in the case of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989), has made *Sommers* "irrelevant." Filing 13 at 11. In *Price Waterhouse*, the plaintiff, Ann Hopkins, "was neither offered nor denied partnership" at the Price Waterhouse accounting firm for whom she worked. *Id.* at 231, 109 S. Ct. at 1781. Hopkins "sued Price Waterhouse under Title VII of the Civil Rights act of 1964 . . . charging that the firm had discriminated against her on the basis of sex in its decisions regarding partnership." *Id.* at 232, 109 S. Ct. at 1781.

Discovery documents produced in the *Price Waterhouse* case illustrated that certain partners at Price Waterhouse provided negative comments about Hopkins during the process of determining whether she should be offered partnership. *Id.* at 235, 109 S. Ct. at 1782. Such comments included that she was "overcompensated for a being a woman." *Id.* Another partner advised her to take "a course at charm school." *Id.* Another partner "criticized her use of profanity," which caused one partner to respond that "those partners objected to her swearing only 'because it's a lady using foul language.'" *Id.* The individual within the firm whose job it was to explain to Hopkins what she could do to improve her chances at partnership suggested she should "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." *Id.* The court concluded that such sex stereotyping was a violation of Title VII. *Id.* at 251, 109 S. Ct. at 1791.

Plaintiff further argues that the Court should refrain from dismissing this case because the law at issue in this case is "unsettled" due to the Sixth Circuit Court of Appeals' holding in *Equal Employment Opportunity Commission v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560 (2018), which is currently on appeal with the United States Supreme Court.

In *Harris Funeral Homes*, the plaintiff, "Aimee Stephens (formerly known as Anthony Stephens)[,] was born biologically male" and worked as a funeral director at the defendant funeral home "[w]hile living and presenting as a man." *Id.* at 566. Stephens was terminated from the funeral home "after Stephens informed [the owner] that she intended to transition from male to female and would represent herself and dress as a woman while at work." *Id.* The Sixth Circuit held that "[d]iscrimination on the basis of transgender and transitioning status is necessarily discrimination on the basis of sex [under Title VII], and thus the EEOC should have had the opportunity to prove that the Funeral Home violated Title VII by firing Stephens because she is transgender and transitioning from male to female. *Id.* at 571.

The Supreme Court of the United States granted a petition for writ of certiorari to answer "whether Title VII prohibits discrimination against transgender peoples based on (1) their status as a transgender and (2) sex stereotyping under *Price Waterhouse*." *R.G. & G.R Harris Funeral Homes, Inc., v. E.E.O.C., et al.*, 139 S. Ct. 1599, 203 L. Ed. 2d 754 (2019) (mem.). This case remains pending with the United States Supreme Court.

   4. *Analysis*

In *Sommers*, the Eighth Circuit Court of Appeals held that Congress did not intend "Title VII of the Civil Rights Act to protect transsexuals from discrimination" and indeed concluded allegations of such discrimination do not fall within the "ambit of the Act." *Sommers*, 667 F.2d at 750. The *Sommers* case directly addresses the very issue presented in this case: whether plaintiffs

10

in this circuit can make a claim under Title VII on the basis of transgender identity or status. The Eighth Circuit has concluded they cannot. Thus, Plaintiff's allegation that she has been discriminated against in violation of Title VII fails as a matter of law in this circuit.

In reviewing law relating to the question of whether discrimination on the basis of transgender identification can be actionable under Title VII, the Court acknowledges there are numerous cases presently being litigated which address related legal questions, which the Plaintiff suggests should alter the Court's decision in this case. The Court concludes that the cases Plaintiff encourages this Court to consider do not alter the required result in this case.

Krei urges the Court to follow the approach of some cases which have read *Price Waterhouse* broadly as expanding the definition of "sex" under Title VII. *See, e.g.*, *Radtke v. Miscellaneous Drivers & Helpers Union Local No 638 Health, Wel-Fare, Eye & Dental Fund*, 867 F. Supp. 2d 1023, 1032 (D. Minn. 2012) ("[T]he 'narrow view' of the term 'sex' in Title VII in . . . *Sommers* 'has been eviscerated by *Price Waterhouse*.'") (quoting *Smith v. City of Salem*, 378 F.3d 566, 573 (6th Cir. 2004))). However, the Supreme Court's holding in *Price Waterhouse* related only to sex stereotyping as a violation of Title VII sex discrimination.[1] 490 U.S. at 251, 109 S. Ct. at 1791 ("[I]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." (quoting *Los Angeles Dept. of Water and Power v. Manhart*, 435 U.S. 702, 707, n.13, 98 S. Ct. 1370, 1375, n.13, 55 L. Ed. 2d 657 (1978))). Therefore, the Court concludes *Price Waterhouse* did not overrule *Sommers* and that case remains good and binding law.

---

[1] The Court's plurality decision that an employer might escape liability by showing that it would have made the same decision even without a discriminatory motive was abrogated by Congress when Congress provided otherwise, *see* 42 U.S.C. § 2000e–2(m), but the Court's conclusion that Title VII prohibits sex stereotyping endures. *See Lewis v. Heartland Inns of Am., LLC*, 591 F.3d 1033, 1038 (2010).

In *Price Waterhouse*, the Court faced very different facts than those in this case. The *Price Waterhouse* court found ample evidence of "sex stereotyping" on the part of the Price Waterhouse partners when the accounting partnership refused to admit a highly qualified female into a partnership that was dominated by males. *Price Waterhouse*, 490 U.S. at 251, 109 S. Ct. at 1791. Unlike the *Price Waterhouse* case, in this case Krei asks the Court to ignore the precise language in the Nebraska Plan prohibiting use of funds for the procedures Plaintiff desires, essentially claiming doing so violates the prohibition on "sex stereotyping" that the Court concluded existed in *Price Waterhouse*. This Court fails to see how the Nebraska Plan's terms that do not cover sex transformation procedures constitute "sex stereotyping." The narrow holding of *Price Waterhouse* is inapplicable to the facts at hand.

The *Harris Funeral Homes* decision from the Sixth Circuit likewise does not dictate a different result in this case. In *Harris Funeral Homes*, the Sixth Circuit held that "[d]iscrimination on the basis of transgender and transitioning status is necessarily discrimination on the basis of sex [under Title VII]." The Eighth Circuit, however, has concluded that "transsexual" discrimination "is not within the ambit of [Title VII]." *Sommers*, 667 F.2d at 750. The Eighth Circuit's rulings are binding upon this Court. Sixth Circuit rulings are not.[2]

The Plaintiff in this matter is asking this Court to ignore the terms of the Nebraska Plan and applicable law and instead insert its own judgment. Although the Court acknowledges Plaintiff's desire to change the law and the rules on this issue, the role of a federal court is not to legislate from the bench but rather to follow and apply the law as it exists. Following the binding case law from this circuit, Krei's claim under Title VII must be dismissed. Having concluded

---

[2] Even if transgender status is within the meaning of "sex" under Title VII, the Court has not evaluated whether the alleged actions of the State in this case are analogous to the alleged discrimination in cases such as *Harris Funeral Homes*. However, the Court need not address this issue because it concludes the *Sommers* case is dispositive of Plaintiff's Title VII claim.

Krei's claim does not fall within Title VII's protections, the Court need not separately address her request for various types of relief.

## B. 42 U.S.C. § 1983 and the Equal Protection Clause

The Court next turns to Krei's claim under 42 U.S.C. § 1983 and the Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment provides, "No State shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. Section 1983 likewise provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress

42 U.S.C. § 1983.

Krei alleges that Nebraska has denied her the equal protection of the laws by refusing to cover gender-transformation services. Filing 2 at 14-15. She seeks declaratory relief, injunctive relief, damages, costs, and attorney fees. Filing 2 at 15. The Court concludes Krei's claim is barred by the doctrine of sovereign immunity to the extent it seeks damages. Furthermore, while there is an exception to sovereign immunity for prospective relief, here, Krei's claim for injunctive and declaratory relief is moot. Accordingly, her § 1983 and Equal Protection claim fails in its entirety.

*1. Sovereign Immunity as to Plaintiff's 42 U.S.C. § 1983 Claim*

The Court begins at the threshold matter of whether Plaintiff's claim relating to the Equal Protection Clause pursuant to 42 U.S.C. § 1983 is protected by the doctrine of sovereign immunity.

The Eleventh Amendment grants a state immunity from suit in federal court by citizens of other states, U.S. Const., Amend. XI, and by its own citizens as well. *Lapides v. Bd. of Regents of*

*Univ. Sys. of Ga.*, 535 U.S. 613, 616 (2002) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)); *see also Emrit v. Gale*, 4:17-CV-3133 2018 WL 618414, at 2 (D. Neb. Jan. 29, 2018) (citing *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995) ("The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity."). Neither states nor state officials acting in their official capacities are "persons" within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "Any award of retroactive monetary relief payable by the state, including back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or override of immunity by Congress. *Brown v. Dep't of Health and Human Servs.*, 8:16-CV-377 2016 WL 6637937, at *3 (D. Neb. Nov. 9, 2016) (citing *Lane v. Pena*, 518 U.S. 187, 192 (1996); *Florida Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 149 (1981); *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981)).

Eleventh Amendment immunity provides states with a defense against suit in federal court but this immunity "is not absolute." *Doe v. Nebraska*, 345 F.3d 593 (8th Cir. 2003). A state may be subject to suit where (1) the state has unequivocally waived its sovereign immunity and consented to suit in federal court; or (2) Congress has unequivocally, through legislation, abrogated state immunity in order to effectuate the provisions of the Fourteenth Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169, 105 S. Ct. 3099, 3107, 87 L. Ed. 2d 114 (1985) ("The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S. Ct. 900, 907, 79 L. Ed. 2d 67 (1984); *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991) ("A state may waive its sovereign immunity and consent to suit in federal

court, and Congress may, by legislation, abrogate immunity without the state's consent in order to effectuate the provisions of the Fourteenth Amendment.").

Congress has not abrogated state immunity or otherwise provided for monetary relief against a state under 42 U.S.C. § 1983. *See Edelman v. Jordan*, 415 U.S. 651, 676-77, 94 S. Ct. 1347, 1362, 39 L. Ed. 2d 662 (1974) ("But it has not heretofore been suggested that § 1983 was intended to create a waiver of a State's Eleventh Amendment immunity merely because an action could be brought under that section against state officers, rather than against the State itself."). Further, the State of Nebraska has not waived its immunity or consented to this suit.

Plaintiff, however, argues Eleventh Amendment immunity is waived here because at the time Nebraska acted it knew that its actions might be found unconstitutional. Filing 13 at 5. In support of her position, Plaintiff relies on *Doe v. Nebraska*, 345 F.3d 593 (8th Cir. 2003). However, the facts in *Doe* are distinguishable.

In *Doe*, the plaintiffs brought an action against the State of Nebraska under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. *Doe*, 345 F.3d at 595. The defendants, the State of Nebraska and various state officials, moved for summary judgment on the basis that they were immune from suit under the Eleventh Amendment of the United States Constitution. *Id.* Under § 504 of the Rehabilitation Act, states that accepted federal funds were required to waive their Eleventh Amendment immunity to claims brought under that section. *Id.* at 598. Furthermore, at the time the State of Nebraska agreed to accept the funds, the ADA also purported to abrogate sovereign immunity. *Id.* at 600. The ADA abrogation provision was later found invalid. *Id.* at 600-01. The State of Nebraska argued that the waiver provision of § 504 of the Rehabilitation Act was invalid first, because it constituted coercion because the State had no choice but to accept the funds and second, because the waiver was not done knowingly because the State believed it had already

given up its Eleventh Amendment sovereignty by virtue of the ADA abrogation provision. *Id*. at 596.

The District Court and the Eighth Circuit rejected both of the State's arguments. *Id* at 594. First, the Court determined the State was not coerced into accepting the funds because, despite the large amount of money involved, the State had the option to decline the funds but chose not to. *Id.* at 597-600. Second, the Court concluded that the State's waiver under the Rehabilitation Act was not unknowing. *Id.* at 600-04. The State was aware of litigation questioning the validity of the ADA waiver and thus should have been on notice that the ADA waiver might be invalidated, thus leaving the Rehabilitation Act waiver as the only basis for abrogating the State's immunity. *Id.* Plaintiff relies on the *Doe* court's analysis of this "knowing waiver" to argue that Nebraska's sovereign immunity should be abrogated because Nebraska is aware of pending cases questioning whether transgender identification or status can be the basis for an Equal Protection Clause claim. Filing 13 at 5-6.

"[A] state may waive its Eleventh Amendment immunity by making "a 'clear declaration' that it intends to submit itself' to federal court jurisdiction." *Id.* at 600 (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676, 119 S. Ct. 2219 (1999)). "This test for waiver is stringent." *Id.* at 600 (citing *Coll. Sav. Bank*, 527 U.S. at 675). A court must "'indulge every reasonable presumption against waiver' of fundamental constitutional rights" *Id.* at 600 (quoting *Coll. Sav. Bank*, 527 U.S. at 682).

Plaintiff's analogy to *Doe* is unavailing. In *Doe*, the State had expressly waived its immunity under the Rehabilitation Act and was seeking to invalidate such waiver based on its supposed lack of knowledge. Here, the State never undertook a clear waiver of its immunity. Plaintiff misrepresents the case when she states the holding is, "'Nebraska should have known that

16

it retained sovereign immunity to waive,' when it accepted the risk that its actions might be deemed unconstitutional because of the existence of a legal controversy that was very much active and unresolved at the time." Filing 13 at 5. But *Doe* does not say that if a state suspects its policy is unconstitutional it unwillingly waives immunity. *Doe* only stands for the proposition that a state may not waive immunity with reason to believe such waiver is valid, and then later claim the waiver was not voluntary or knowing. That is not the case here and, as such, the Eleventh Amendment bars Plaintiff's claim for monetary damages against all Defendants.

> 2. *The Exception to Sovereign Immunity in* Ex Parte Young *Does Not Permit Prospective Injunctive and Declaratory Relief Because Krei's Claim Is Moot*

However, finding that the State has not waived its sovereign immunity as to monetary damages does not end the inquiry. An exception to sovereign immunity was recognized by the Supreme Court in *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), which permits *prospective* injunctive relief against state officials for ongoing federal law violations. This exception does not apply to cases involving requests for purely retroactive relief and thus would apply only to Krei's request for injunctive and declaratory relief. *Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423, 426, 88 L. Ed. 2d 371 (1985) ("We have refused to extend the reasoning of *Young*, however, to claims for retrospective relief.").

Under *Ex Parte Young*, Plaintiff's claim for prospective injunctive relief against Defendants may not be dismissed solely on Eleventh Amendment grounds. However, for other reasons as explained below, her claim is dismissed as moot as to all Defendants. Specifically, Plaintiff's request for prospective injunctive and declaratory relief is moot because Plaintiff is no longer an employee of the State Nebraska.

17

Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot—i.e., where the controversy is no longer live and ongoing. *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994) (citing *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990)); *see also Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000) ("Article III of the United States Constitution limits the jurisdiction of the federal courts to actual, ongoing cases and controversies."). "The touchstone of the mootness inquiry is whether the controversy continues to 'touch[] the legal relations of the parties having adverse legal interests' in the outcome of the case." *Cox*, 43 F.3d at 1348 (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 317, 94 S. Ct. 1704, 1706, 40 L. Ed. 2d 164 (1974) (per curiam)). "This 'legal interest' must be more than simply the satisfaction of a declaration that a person was wronged." *Id.* (citing *Ashcroft v. Mattis*, 431 U.S. 171, 172–73, 97 S. Ct. 1739, 1740, 52 L. Ed. 2d 219 (1977)).

Defendants have no authority over Plaintiff moving forward and would be incapable of complying with any injunctive relief ordered as to this plaintiff. Likewise, with respect to Plaintiff's request for relief under the Declaratory Judgment Act, her request is also moot. A plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being injured again. *Id.* at 1348. In *Cox*, the Tenth Circuit Court of Appeals wrote "we have concluded that a legitimate termination of employment moots a plaintiff's § 1983 claim for declaratory and/or injunctive relief relating to conditions of the plaintiff's employment," and concluded that mootness barred claims for such relief because the plaintiff was no longer employed by the employer whose policy she sought to enjoin. *Id.*

Therefore, Krei's claim for injunctive and declaratory relief under the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 is dismissed as moot.

V. CONCLUSION

Krei's cause of action under Title VII fails to state a claim upon which relief can be granted. Her claim for monetary damages under 42 U.S.C. § 1983 and the Equal Protection Clause is barred by sovereign immunity. Her claim for injunctive and declaratory relief under 42 U.S.C. § 1983 and the Equal Protection Clause is moot because she is no longer an employee of these State of Nebraska. For these reasons, Defendants' Motion to Dismiss is granted. Accordingly,

IT IS ORDERED:

1. Defendants' Motion to Dismiss (Filing 11) is granted;
2. Counts I and II are dismissed without prejudice;
3. A separate judgment will be entered.

Dated this 16th day of March, 2020.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge